## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

Isaiah Brady (#R-28430),　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　)
　　　　　　　　　　　　　　　　　)　　　Case No. 18-CV-5612
　　　　　　v.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　)　　　Hon Franklin U. Valderrama
Randy Pfister., et al.,　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　)

## MEMORANDUM OPINION AND ORDER

Isaiah Brady, currently an inmate at Lawrence Correctional Center, brought this *pro se* civil rights lawsuit under 42 U.S.C. § 1983, stemming from the medical care he received from Defendants at Stateville Correctional Center (Stateville) after sustaining an injury while playing basketball on August 31, 2017. Plaintiff alleges that Dr. Obaisi[1] and Wexford Health Sources, Inc. provided him with constitutionally inadequate health care for a laceration he suffered to his right wrist. Defendants have moved for summary judgment. (Dkt. 194.) For the reasons that follow, Defendants' motion for summary judgment is granted.

## BACKGROUND

### I.　Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often

_____

[1]Dr. Obaisi died on December 23, 2017, and has been substituted as a party by Ghalia Obaisi, the executor of his estate.

cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3).

"[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). Specifically, a district court is not required to "'wade through improper denials and legal argument in search of a genuinely disputed fact.'" *Id.* (quoting *Bordelon v. Chicago Sch. Reform Bd. of Trustees,* 233 F.3d 524, 529 (7th Cir. 2000)).

Defendants filed their statement of material facts, citing to the record in support of each statement as required under the local rules. (Dkt. 196.) Because

2

Plaintiff is proceeding *pro se*, Defendants served him with the required "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 197.) Plaintiff did not respond to Defendants' motion nor the statements of fact as provided for by LR 56.1(e).

Where Plaintiff has not properly responded to a certain fact or has admitted it, the Court will accept it as true to the extent supported by the record. *Lamz*, 321 F.3d at 683.

Nonetheless, although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the facts identified by Plaintiff to the extent they are supported by the record, or he could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). The Court will not look beyond the cited material, however. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

Additionally, Plaintiff's failure to strictly comply with Local Rule 56.1 is not a basis for automatically granting Defendants' motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court will apply these standards in evaluating the evidence.

## II.     Relevant Facts[2]

Plaintiff is an inmate of the Illinois Department of Corrections ("IDOC") and was at Stateville from June 2016 to October 2018. (Def. SOF, Dkt. 196, ¶ 4.) Defendant Ghaliah Obaisi is the Independent Executor of the Estate of Dr. Saleh Obaisi, who was Stateville's former medical director until his death in December 2017. (*Id.* at ¶ 5.) Defendant Wexford Health Sources, Inc. is a private company that provides certain medical services to IDOC inmates pursuant to a contract with the IDOC and State of Illinois. (*Id.* at ¶ 6.) The Complaint lists several Does that were never terminated on the docket, including Jane Doe Nurse Lydia; John Doe Correctional officer; and Unknown Health Care Unit Administrator. (*Id.* at ¶ 7.) Plaintiff never converted any of these individuals to actual defendants, nor did he ever serve any of them. (*Id.*)

On August 31, 2017, between 11am to 12pm, Plaintiff tripped over another inmate playing basketball in the yard and sustained a 1-1.5 inch long cut on his wrist moving transversely pinkie to thumb. (*Id.* at ¶ 28.) When Plaintiff was taken to the healthcare unit within an hour of his injury, he saw Dr. Obaisi for a consultation and procedure, lasting 30-45 minutes. (*Id.* at ¶ 30.)

Dr. Obaisi found a 2 cm transverse anterior open wound to the Plaintiff's right wrist. (*Id.* at ¶ 32.) He cleaned the Plaintiff's wound with betadine, applied lidocaine anesthetic, and then sutured the wound with three stitches before applying a wound

---

[2]This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred at Stateville which is located in Will County, within the Northern District of Illinois.  (*See* Defs.' SOF, Dkt. No. 196, at ¶¶ 1-2.)

dressing. (*Id.* at ¶ 33.) For his plan of care, Dr. Obaisi Directed Plaintiff to keep the wound dry, change the dressing as needed and to follow up. (*Id.* at ¶ 34.) Dr. Obaisi also prescribed the medication (Naprosyn) for any pain. (*Id.*)

On September 7, 2017, Plaintiff presented in clinic and consulted with PA Williams, Dr. Obaisi's physician's assistant. (*Id.* at ¶ 35.) PA Williams noted that she consulted with Plaintiff for suture removal, and the Plaintiff had no complaints other than a little tingling in three fingers. (*Id.* at ¶ 36.) PA Williams found that Plaintiff's sutures were well healed, so the sutures were removed, and the Plaintiff was educated to return to the clinic as needed. (*Id.*)

Between September 7, 2017, and September 19, 2017, Plaintiff consulted with Nurse Diaz to confirm that he had an appointment to see PA Williams for his wrist. (*Id.* at ¶ 38.) Nurse Diaz performed an examination, finding that the Plaintiff showed no signs or symptoms of acute distress and recorded that the Plaintiff had no complaints. (*Id.* at ¶ 39.) She advised the Plaintiff that he had an appointment on the books to see PA Williams. (*Id.*)

On September 19, 2017, Plaintiff went to the health care unit to see PA Williams and for a reported off and on tingling in the first, second, and third right fingers. (*Id.* at ¶ 40.) PA Williams performed an examination, finding that the Plaintiff reported intermittent neuropathy in the first three fingers on his right hand, but was recovering from the laceration. (*Id.* at ¶ 41.) PA Williams noted that tingling did not suggest a possible laceration of the tendon because tendons do not usually cause numbness or tingling sensation; rather, tingling is usually more of a nerve

issue. (*Id.* at ¶ 42.) She also explained that it is common that following an injury, pain lingers. (*Id.* at ¶ 43.) PA Williams's plan of care was patient education on her assessment of his ongoing healing, and to follow up in the clinic in six weeks to check on his hand. (*Id.* at ¶ 44.)

On October 8, 2017, Plaintiff spoke to Nurse Diaz to confirm that he had an appointment on the books with Dr. Obaisi. (*Id.* at ¶ 45.) Nurse Diaz noted that during the conversation, Plaintiff showed no signs of distress, and voiced no complaints, and confirmed his upcoming appointment. (*Id.*)

On October 17, 2017, Plaintiff saw Dr. Obaisi in the clinic, where he complained of pain in his wrist, and, unrelated, pain in his ankle. (*Id.* at ¶ 46.) Dr. Obaisi performed an assessment finding tenderness in Plaintiff's right wrist. (*Id.* at ¶ 47.) His assessment was tendonitis of the right wrist and an ankle sprain of the right ankle. (*Id.*) Dr. Obaisi's plan of care was to issue a therapeutic sleeve for both the right ankle and right wrist as well as physical therapy for the right wrist, and a prescription for the medication Mobic for pain. (*Id.* at ¶ 48.)

On October 27, 2017, Plaintiff consulted with the physical therapist. (*Id.* at ¶ 49.) The physical therapist noted a scar presenting on the wrist with a small area of induration near the scar. (*Id.*) The Plaintiff also complained of numbness in the first, second, and third digits with some limitation in his range of motion. (*Id.*) The physical therapist assessed the Plaintiff as having good rehabilitation potential and set him for physical therapy once a week for 8-12 weeks. (*Id.* at ¶ 50.)

Plaintiff attended three physical therapy sessions before it was discontinued. (*Id*. at ¶ 52.) The reason that Plaintiff's recommended physical therapy was discontinued after only three of the recommended eight to twelve sessions was because Plaintiff self-terminated physical therapy. (*Id*. at ¶ 53.)

On October 31, 2017, Plaintiff met with PA Williams in clinic for follow up on the right hand. (*Id*. at ¶ 54.) Plaintiff reported that he was still taking medications as directed but had to alter his workouts in the yard. (*Id*.) PA Williams's assessment of Plaintiff's medical condition was chronic pain, and her plan of care was education and reassurance to the patient, continue all medications as directed, and return to clinic as needed. (*Id*. at ¶ 55.)

On December 21, 2017, Dr. Obaisi saw the Plaintiff in clinic, and he noted that the Plaintiff reported complaints of pain at the anterior right wrist and anterior left shoulder and physical therapy did not resolve the pain. (*Id*. at ¶ 56.) Dr. Obaisi performed a physical assessment finding that Plaintiff had tenderness at the lateral anterior flexor of the long head of his left bicep. (*Id*.) Dr. Obaisi's assessment was tendonitis of the right wrist and left shoulder. (*Id*. at ¶ 57.) Dr. Obaisi's plan of care was to prescribe Plaintiff a depomedrol injection for pain relief, which he provided that same day. (*Id*.) Dr. Obaisi died, two days later, on December 23, 2017. (*Id*. at ¶ 58.)

On April 10, 2018, Plaintiff saw PA Williams in clinic complaining of his stomach bothering him over the last few weeks, bloating, and lots of gas. (*Id*. at ¶ 59.) Plaintiff reported that he was stressing a lot, but also said that his finger sprain was

resolving. (*Id*.) PA Williams performed a physical examination finding that the Plaintiff had a possible H. Pylori bacterial infection. (*Id*. at ¶ 60.) She prescribed the Plaintiff Prilosec 20 mg, amoxicillin, erythromycin, and directed him to return to clinic in one month. (*Id*.) Plaintiff's only mention of his hand or finger during this encounter was stating that it was resolving. (*Id*. at ¶ 61.)

On June 1, 2018, Plaintiff consulted with a doctor at Stateville for a hand complaint. (*Id*. at ¶ 62.) The doctor noted weak flexion of Plaintiff's wrist and fingers and made a plan to refer the Plaintiff offsite for consultation at UIC orthopedics. (*Id*.) On October 18, 2018, Plaintiff consulted with UIC orthopedics. (*Id*. at ¶ 63.) The orthopedic surgeon noted no atrophy or tenderness to the hand at palpation and assessed that Plaintiff had "subluxation of the extensor tendon of the right long finger which seems to be unrelated to his laceration on the volar aspect of his wrist, no numbness or tingling." (*Id*. at ¶ 64.) The surgeon ordered an MRI. (*Id*. at ¶ 65.)

On December 20, 2018, Plaintiff again saw UIC orthopedics to review the MRI results. (*Id*. at ¶ 66.) The surgeon noted that the MRI suggested a long radial sagittal band rupture with subluxation of the tendon and recommended getting an EMG study. (*Id*.) On April 25, 2019, Plaintiff consulted, again, with UIC orthopedics to go over the EMG study results and UIC orthopedics diagnosed Plaintiff with carpal tunnel syndrome and recommended surgical intervention, specifically, a carpal tunnel release. (*Id*. at ¶ 67.) On June 10, 2019, Plaintiff secured carpal tunnel release after the Plaintiff failed conservative therapy. (*Id*. at ¶ 68.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The parties seeking summary judgment bear the initial burden of showing the grounds for their motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once they have done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*,

200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up). Further, when there is video evidence in the record, the Court may "take stock of what the video evidence shows without favoring [the non-movant] where the video contradicts his view of the facts." *See Lopez v. Sheriff of Cook Cty.*, 993 F.3d 981, 984 (7th Cir. 2021) (citing *Scott v. Harris*, 550 U.S. 372, 378–81 (2007)).

## ANALYSIS

Plaintiff asserts four claims in his second amended complaint (Dkt. 84): (1) deliberate indifference to serious medical condition against all Defendants, relating to the treatment he received for a laceration to his wrist; (2) a pattern and practice of deliberate indifference under *Monell* against Defendant Wexford Health Sources, Inc. (Wexford); (3) negligence; and (4) *respondeat superior* liability against Wexford.[3] In their motion for summary judgment, Defendants Estate of Obaisi and Wexford argue that Defendants are entitled to summary judgment on all four claims.

### A. Plaintiff's Claim of Deliberate Indifference to a Serious Medical Condition

The Eighth Amendment right to be free from cruel and unusual punishment prohibits state officials and medical personnel from acting with deliberate

---

[3]On October 13, 2020, Defendant Wexford filed a partial motion to dismiss the Second Amended Complaint asserting that any *respondeat superior* claim was barred pursuant to *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Gaston v. Ghosh, et al.,* 920 F.3d 493, 498 (7th Cir. 2019). The parties submitted a joint statement (Dkt. 90) on November 12, 2020, in which Plaintiff withdrew the *respondeat superior* claim, and on November 13, 2020, the Court struck the *respondeat superior* claim and denied the motion to dismiss as moot.

indifference to an inmate's serious medical needs. *Conley v. Birch*, 796 F.3d 742, 746 (7th Cir. 2015) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016) (en banc). Deliberate indifference claims contain both an objective and a subjective component: the inmate must have an objectively serious medical condition, and the defendant must be subjectively aware of and consciously disregard the inmate's serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court will address both elements in turn.

### A.    Objective Element—Serious Medical Condition

Defendants argue that Plaintiff's injury did not constitute an objectively serious medical condition. The Court disagrees, finding that Plaintiff's injury qualifies as a serious medical condition.

The established standard recognizes that "[a] medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014). Additionally, a condition meets this threshold if a "failure to treat [it] could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008) (citation omitted).

Here, the Court notes, as reflected in the docket entry from September 18, 2018 (Dkt. 6) that Plaintiff had sufficiently pleaded the elements of a claim for deliberate indifference, including the assertion of an objectively serious component. Furthermore, the record demonstrates that Plaintiff's injury (and subsequent pain) warranted continuous and substantial medical care, including clinical examinations,

11

prescribed medications, physical therapy, and a referral to a specialist orthopedist. Such documented ongoing medical treatment underscores the seriousness of Plaintiff's condition and substantiates the Court's finding.

## B.     Subjective Element—Deliberate Indifference

To satisfy the subjective element of a deliberate indifference claim, Plaintiff must show that medical personnel acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 105. Deliberate indifference is comparable to criminal recklessness. *Farmer*, 511 U.S. at 837. Accordingly, the official must both "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "The requirement of subjective awareness stems from the Eighth Amendment's prohibition of cruel and unusual punishment; 'an inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain."' *Zaya v. Sood*, 836 F.3d 800, 804-05 (7th Cir. 2016) (*quoting Estelle*, 429 U.S. at 105).

Merely negligent actions, even amounting to gross negligence, or claims of medical malpractice, are insufficient to meet the deliberate indifference standard. Disagreement with a prescribed course of treatment also fails to suffice. *See, e.g., Cesal v. Moats*, 851 F.3d 714, 724 (7th Cir. 2017) ("Deliberate indifference requires more than evidence of negligence or medical malpractice.") (citations omitted); *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012); *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012); *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Inmates "are not entitled to receive 'unqualified access to healthcare.'"

*Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). "To survive summary judgment," an inmate "need[s] to present evidence sufficient to show that [a medical professional's] decision was 'so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment.'" *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (citation omitted).

Here, the Court finds that, considering the totality of care provided to Plaintiff. no reasonable factfinder could conclude deliberate indifference on the part of Defendants Obaisi or Wexford. *See Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000); *Gutierrez v. Peters*, 111 F.3d 1364, 1374-1375 (7th Cir. 1997) (courts examine the totality of the medical care provided, and even if there were any isolated incidents of delay in treatment, when assessing deliberate indifference claims).

As described above, the evidence indicates Plaintiff promptly received medical attention following his injury on August 31, 2017. Within an hour, Plaintiff saw Dr. Obaisi, who cleaned, sutured, and dressed the wound, instructed Plaintiff on wound care, and provide pain medication with follow-up care. And in the four months Plaintiff was treated by Dr. Obaisi, prior to Dr. Obaisi's death, he repeatedly saw medical personnel, received ongoing care, including wound care, follow-up care, pain medication, referrals, and physical therapy, which Plaintiff independently decided to terminate after three sessions, prior to its completion, culminating in surgical intervention in 2019 for carpal tunnel syndrome (a condition unrelated to Plaintiff's original laceration).

No evidence suggests that Dr. Obaisi's treatment or that of other medical personnel, including consistent treatment and the use of sound medical judgment, was outside the standard of care. Put differently, Plaintiff has not met his burden to marshal evidence that Obaisi's care was devoid of judgment. *See Clark v. Wexford Health Sources, Inc.*, No. 19-3181, 2020 WL 6305975, at *2 (7th Cir. Oct. 28, 2020) (noting decisions based on medical judgment are not deliberately indifferent); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006) (same); *see also Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 663 (7th Cir. 2016) (affirming grant of doctor's motion for summary judgment when plaintiff did not "have *any* expert testimony indicating that [the doctor's] infection diagnosis and concomitant treatment plan departed from accepted medical practice, much less *substantially* so") (emphasis in original).

For these reasons, based on the uncontroverted evidence in the record, Plaintiff similarly fails to establish deliberate indifference with respect to Defendant Wexford. In the same vein, Plaintiff has failed to establish any evidence of a policy or procedure on the part of Wexford, that might establish a claim pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 694 (1978). Thus, Defendant Wexford is also entitled to summary judgment. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866 (7th Cir. 2013) (holding that it was unnecessary to determine Wexford's policy as to MRI scans because the plaintiff failed to establish a constitutional problem with his treatment and did not suffer an actionable injury from the policy attributed to Wexford).

14

The Court acknowledges that Plaintiff is also pursuing a state law negligence claim against Defendants concerning the treatment of the laceration on his wrist. However, having "dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over any state-law claims, which are dismissed without prejudice. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) ("Although the decision is discretionary, 'when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.'").

Additionally, the Court notes that Plaintiff failed to file an affidavit and medical report in compliance with 735 ILCS § 5/2-622 by the deadline for filing a dispositive motion on the merits as to his medical negligence claims, as required under Illinois law. *Young v. United States*, 942 F.3d 349 (7th Cir. 2019).

In light of these considerations, the Court grants summary judgment in favor of Defendants Obaisi and Wexford and terminates this case.[4]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment [194] is granted. The Clerk is directed to enter final judgment. If Plaintiff wishes to appeal,

---

[4]The Court notes that there are unidentified (John Doe and Unknown Administrator) and unserved Defendant (Nurse Lydia) who remain on the docket as active Defendants. These Defendants were never served, although Plaintiff had recruited counsel to effectuate service, and the operative complaint was filed on September 4, 2020. (Dkt. 84.) Consequently, dismissal is warranted as to all unidentified and unserved Defendants. *See* Fed. R. Civ. P. 4(m); Fed. R. Civ. P. 56 (f); Fed. R. Civ. P. 15(c); *See Ellis v. Carper*, 2024 U.S. App. LEXIS 24129, *8 (7th Cir., Sept. 23, 2024); *citing Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001).

he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1).[5] If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g).

Dated: March 19, 2025

United States District Judge
Franklin U. Valderrama

---

[5]Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).